IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE

## MADGE KIRKHAM FELL, ET AL. v. GLORIA RAMBO

**Chancery Court for Marshall County**
**No. 9147     Lee Russell, Judge**

---

**No. M1999-01039-COA-R3-CV — Decided June 22, 2000**

---

**OPINION DENYING PETITION FOR REHEARING**

KOCH, J., delivered the opinion for the court in which CAIN and COTTRELL, JJ., joined.

The remaindermen[1] have filed a petition for rehearing in accordance with Tenn. R. App. P. 39 requesting this court to reconsider portions of its May 5, 2000 opinion and order. We directed Ms. Rambo to respond to the petition and have now received her response. After reviewing our May 5, 2000 opinion and order, we have determined that we neither overlooked nor misconstrued any material evidence in the appellate record. Accordingly, we adhere to our original May 5, 2000 opinion and order, subject to the typographical correction and the clarifications provided in this opinion.

**I.**

We turn first to the remaindermen's assertion that we "erred by ignoring the effect of Mrs. Crockett's will." They contend we ignored language that they believe reflects Ms. Crockett's intention to pass along the proceeds of the sale of the Crockett farm to them. This argument relies on the following language in Ms. Crockett's will: "I reiterate and adopt by reference, as if contained herein verbatim, the language of the Will of my husband, JOHN E. CROCKETT . . . and I devise and bequeath any such property to which said language is applicable in the same manner therein set out."

The trial court pretermitted this argument because Ms. Crockett had sold the farm. The remaindermen, for their own reasons, did not renew the argument in their original brief or during oral argument. Thus, we did not address this argument for the simple reason that the remaindermen did not make it. Even though the remaindermen cannot belatedly raise this argument for the first

---

[1]The remaindermen include: Madge Kirkham Fell, Betty Kirkham Bowland, Bernice Kirkham Bowers, and Debbie Little.

time in their petition for rehearing, we will address it briefly to demonstrate that it would have availed them little had they raised it in a timely manner.

Ms. Crockett was a life tenant with an unlimited power of disposition. Once she sold the farm, she could do with the proceeds as she pleased. By operation of the pre-1981 version of Tenn. Code Ann. § 66-1-106 (1993), any proceeds of the sale of the farm unspent at the time of Ms. Crockett's death were placed beyond the reach of Mr. Crockett's will and passed instead through Ms. Crockett's will. Ms. Crockett's will clearly reflects her settled purpose to leave everything she owned to a group of beneficiaries that did not include the remaindermen. The remaindermen have yet to explain satisfactorily how Ms. Crockett's reiteration in her will of language in Mr. Crockett's will pursuant to which their remainder interest was terminated somehow revives the remainder interest they lost by operation of law.

**II.**

The remaindermen raise three additional issues that can conveniently be addressed together. Each involves a mischaracterization of our May 5, 2000 opinion. First, the remaindermen contend that we "erred in adjudging the transfer of proceeds of the farm as a gift to Gloria Rambo." We did not conclude that Ms. Crockett made a gift of the proceeds of the sale of the farm to Ms. Rambo; however, even if we had, the remaindermen have failed to explain how the outcome of this appeal would have been affected had she done so.

The remaindermen based their argument on a portion of our opinion addressing their assertion that the sale of the Crockett farm should be set aside because Ms. Rambo exerted undue influence over Ms. Crockett. We pointed out that Ms. Rambo was Ms. Crockett's attorney-in-fact and that, as the primary residual beneficiary under Ms. Crockett's will, Ms. Rambo stood to gain from Ms. Crockett's decision to sell the Crockett farm.[2] Thus, we determined that a presumption arose that Ms. Rambo unduly influenced Ms. Crockett to sell the farm and that Ms. Rambo was required to rebut this presumption by presenting clear and convincing evidence of the fairness of the transaction.

In response to the remaindermen's assertion that Ms. Rambo had produced no evidence that Ms. Crockett received independent advice regarding the sale of the farm, we pointed out that evidence of independent advice is required only where it would be difficult to show the fairness of the transaction without it. This typically arises when the transaction under scrutiny is a gift from a feeble or incompetent subservient party to the dominant party that leaves the donor impoverished. The language that the remaindermen complain of in our opinion reads as follows: "Nevertheless, because the sale of the Crockett farm was a gift to Ms. Rambo only in the loosest sense, and certainly did not leave Ms. Crockett impoverished, it is not necessary to show that Ms. Crockett received

---

[2]The sale defeated the plaintiffs' remainder interest in the property, thereby increasing the size of Ms. Crockett's estate.

independent advice." The remaindermen appear to interpret this language as a determination that Ms. Crockett made a gift of the proceeds of sale to Ms. Rambo.

If clarification of this language is needed, we provide it now. In our May 5, 2000 opinion, we did not determine whether Ms. Crockett intended to make a gift to Ms Rambo of the proceeds of sale of the farm or whether the sale of the farm was effectively a gift to Ms. Rambo. We were not required to do so. The transfer of the farm, whether or not a gift, did not leave Ms. Crockett impoverished. Accordingly, Ms. Rambo was not obliged to prove that Ms. Crockett received independent advice[3] in order to rebut the presumption of undue influence. She produced other competent evidence on this point.

Second, the remaindermen insist that this court "stated that Mrs. Crockett obtained independent advice from a realtor prior to the sale." Again, this is incorrect. In discussing Ms. Crockett's mental capacity to convey the farm, the opinion states that the realtor "questioned Ms. Crockett at length . . . and ascertained that Ms. Crockett understood she was selling the farm." In our discussion of undue influence, we again mentioned that the realtor "questioned Ms. Crockett to insure that she understood what she was doing, and was satisfied that she did." The opinion does not state or imply that Ms. Crockett received independent advice from any person. Moreover, as mentioned in the previous section, we determined that independent advice was not necessary to rebut the presumption of undue influence.

Third, the remaindermen assert that we erroneously stated that the plaintiffs received "full access to the relevant records." In fact, the opinion states only that the trial court "appointed an administrator ad litem for Ms. Crockett's estate, granted the remaindermen access to the estate's records and accounts and to Ms. Rambo's personal account records, and directed Ms. Rambo to provide the remaindermen with a reconciliation of several certificates of deposit." We did not state that the plaintiffs received "full access" to the estate records.

Again we fail to see how this argument advances the remaindermen's cause. The remaindermen are not beneficiaries under Ms. Crockett's will and cannot inherit from her under the intestacy laws. Thus, their only standing to maintain this action derives from their claimed interest in the proceeds of the sale of the Crockett farm. Once we determined that the sale of the farm terminated their remainder interest in both the farm and the proceeds from the sale of the farm, the remaindermen had no standing to demand an accounting of assets in Ms. Crockett's estate. Our recital of the fact that the remaindermen did receive access to estate records, among other things, in no way affects this holding.

### III.

---

[3]Without in any way changing its effective meaning, we could rephrase the sentence to which the plaintiffs object as follows: "Whether or not the sale of the Crockett farm could somehow be interpreted as a gift to Ms. Rambo, it certainly did not leave Ms. Crockett impoverished and, accordingly, it is not necessary to show that Ms. Crockett received independent advice."

The remaindermen assert that this court "states that the substance of the Plaintiffs [sic] TENN. R. APP. P. 10 appeal was over the Trial Court's dismissal of the TRCP 60 opinion." They argue, to the contrary, that their Tenn. R. App. P. 10 application "did not address the TRCP 60 motion substance." After reviewing the plaintiffs' March 13, 2000 motion for extraordinary appeal and the attached memorandum of law in support, we agree that the substance of their application for extraordinary appeal did not take issue directly with the trial court's ruling on the remaindermen's Tenn. R. Civ. P 60 motion. Instead, the remaindermen relied on the trial court's disposition of the Tenn. R. Civ. P. 60 motion as evidence of bias and sought immediate review of the trial court's refusal to recuse itself.

Nevertheless, the remaindermen have not stated a ground for rehearing this case. Our May 5, 2000 order addresses and denies their application for extraordinary appeal from the trial court's decision not to recuse itself. Our agreement with the trial court's denial of the remaindermen's Tenn. R. Civ. P. 60 motion only reinforces our conclusion that the trial court has not so far departed from the accepted and usual course of judicial proceedings as to require immediate review pursuant to Tenn. R. App. P. 10.

## IV.

The remaindermen also request that we correct five "material" alleged errors in the May 5, 2000 opinion and order. Because they either identify only immaterial errors or mischaracterize or misunderstand the opinion and order, we have determined that none of the errors or perceived errors warrant a rehearing.

First, the remaindermen correctly point out that Ms. Crockett died on April 11, 1994, as opposed to April 1, 1994 as stated in the opinion. This typographical error, however unfortunate, is not a material misstatement of fact, as it has no potential to affect the outcome of the case.

Second, the remaindermen correctly state that the opinion taxes costs to Ms. Rambo for her motion to dismiss Debbie Little as a party to this appeal, but complain that the "contemporaneous Order does not conform to this finding." The May 5, 2000 order to which the remaindermen refer addresses the remaindermen's Tenn. R. App. P. 10 application for extraordinary appeal. The order in no way relates to Ms. Rambo's motion to dismiss Ms. Little. The remaindermen offer no reason why the order should address the costs of Ms. Rambo's motion to dismiss Ms. Little, and we can see none.

Third, the remaindermen also assert that we incorrectly "found that the Trial Court ordered funds held by the Clerk and Master after June 20, 1997." The opinion actually states that "[o]n June 20, 1997, the trial court filed a memorandum opinion concluding that the remaindermen had, as a matter of law, an interest in the proceeds of the sale of the Crockett farm. Accordingly, the trial court directed that three certificates of deposit totaling $207,000 of the proceeds of the sale of the farm be deposited with the clerk and master."

For what it is worth, we accept that the context of the second sentence makes it somewhat misleading. It may appear from the opinion as though the trial court ordered the funds held by the clerk and master on or after June 20, 1997. As the remaindermen point out, the trial court ordered these funds held by the clerk and master in November 1996. Again, though, the remaindermen do not explain how this discrepancy in dates has any bearing on the outcome of the appeal. Because we determined that the remaindermen have no interest in the proceeds from the sale of the farm, it is irrelevant to this appeal on what date the trial court ordered the three certificates of deposit to be deposited with the clerk and master.

Fourth, the remaindermen assert that our opinion "ignores that the Trial Court ordered Ms. Rambo to pay all valid claims but that Ms. Rambo has ignored the undisputed Court order by failing to pay the plaintiffs' valid claim for Dr. Auble's fees." The trial court's March 30, 1998 order to which the remaindermen refer does not address their claim for the fees charged by Dr. Pamela Auble in her evaluation of Ms. Crockett's competence. It merely states that "Gloria Rambo shall pay out of current estate funds all allowed claims." In its May 13, 1999 memorandum opinion, the trial court specifically denied the remaindermen's request for an award of Dr. Auble's fees.[4] The remaindermen did not raise the issue of Dr. Auble's fees in their brief on appeal. Accordingly, this court had no reason to mention in its recital of the facts the trial court's disposition of the issue of Dr. Auble's fees or Ms. Rambo's actions pursuant to that disposition.

Finally, the remaindermen state that our "opinion cites the Trial Court's finding that the Plaintiffs' own real estate appraiser agreed that the price for the farm was fair." While an error as to the appraiser's testimony could indeed be material, our opinion commits no such error. It correctly states that, according to the appraiser, the purchase price of the Crockett farm "was within a reasonable negotiating range."[5]

## V.

We respectfully deny the remaindermen's petition for a rehearing. We likewise tax the costs incident to the petition for rehearing jointly and severally against Madge Kirkham Fell, Betty

---

[4]The court stated that "[n]o proof was presented at the June / July trial about this fee. The Plaintiffs should pursue this claim against the Estate, whose lawyer announced in court on May 7, 1999, that he does not resist payment of the bill by the Estate." The court noted that "[t]he case sub judice is neither the estate file, Marshall County Chancery Court Case 34-94, nor the conservatorship file, Case No. 8759. The pleadings in the case sub judice, as amended, do not include any claim for Dr. Auble's fees."

[5]Under cross-examination, the appraiser, James Donald Turner was asked whether the fourteen percent differential between his appraisal of the value of the Crockett home and farm and the actual price received was "within the reasonable negotiating realm" in view of the fact that the house was deteriorating and Ms. Crockett who was ninety-six at the date of sale was residing in a nursing home away from the farm. Mr. Turner's response was "[i]t would sound reasonable."

Kirkham Bowland, Bernice Kirkham Bowers, and Debbie Little for which execution, if necessary, may issue.